**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

CARL HOFFER,
RONALD MCPHERSON, and
ROLAND MOLINA, individually
and on behalf of a class of persons
similarly situated,
Plaintiff,

    v.                                                    Case No. 4:17-cv-00214-MW-CAS

JULIE L. JONES, in her official
capacity as Secretary of the
Florida Department of Corrections,
Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

    Plaintiffs Carl Hoffer, Ronald McPherson, and Roland Molina (Plaintiffs),

hereby respond to Defendant's Motion to Dismiss.  D.E. 18.  Defendant's central

argument rests on a complete mischaracterization of the facts as plead in the

Complaint.  Rather than alleging a mere dispute over the adequacy of medical

treatment, Plaintiffs have plead that the Florida Department of Corrections (FDC)

has categorically withheld treatment from all prisoners with hepatitis C, thus

subjecting them to discrimination in violation of the Americans with Disabilities Act

(ADA) and the Rehabilitation Act (RA).  Defendant likewise ignores the numerous

cases—including one last month rejecting nearly identical arguments—holding that

a categorical refusal to provide hepatitis C treatment to incarcerated people violates the ADA and RA.  The motion should be denied.

## Facts Plead in the Complaint

In summary, the facts plead in the Complaint are as follows.  Beginning in 2013, the treatment of hepatitis C virus (HCV) was revolutionized by the approval of a new class of medications called direct-acting antiviral (DAA) drugs.  D.E. 1 ¶¶ 41-42.  These drugs cure up to 95% of patients with a simple 12-week course of once-daily pills with little to no side effects.  *Id*. at ¶¶ 42-43.  Before the introduction of DAA medications, the existing treatment only cured roughly one third of patients, had serious side effects that were often worse than the symptoms of HCV, and could not be given to patients with many comorbid diseases.  *Id*. at ¶¶ 40, 43.

In response to these revolutionary medications, the medical community convened a panel of experts to determine which treatment regimens should be provided to which patients.  *Id*. at ¶ 45.  After rigorous study, the expert panel developed a recommendation:  all HCV patients should be immediately treated with DAA drugs, regardless of the stage of the disease.  *Id*. at ¶ 47.  This is the medical standard of care that has even been adopted by the Florida Agency for Health Care

Administration.  *See id*. at ¶ 48;[1] D.E. 11-1.  The expert panel also discourages use of the previous treatment regimens.  *See* D.E. 1 ¶¶ 45-47; D.E. 10-5 at 35.

Despite this clear standard and recommendation, the FDC categorically refuses to provide these medications—which are the only acceptable form of treatment for HCV—to FDC prisoners.  D.E. 1 ¶¶ 82.  The FDC is not evaluating the patients' conditions and deciding that they should not receive these medications (which would be contrary to the standard of care); rather, the FDC simply refuses to provide them.  *Id*. at ¶ 74-76, 78.  Importantly, this approach is reserved for prisoners with HCV—prisoners with other similar diseases (such as HIV) are evaluated and prescribed a treatment regimen.  *Id*. at ¶¶ 82.   The FDC's refusal to treat HCV has caused the suffering and probable death of hundreds or thousands of FDC prisoners.  *See id*. at ¶¶ 23, 33-34, 65, 73, 76, 83, 106, 123, 138.

### Plaintiffs Have Clearly Stated ADA and RA Claims

The ADA forbids public entities from excluding individuals from participation in, or denying them the benefits of, a public entity's services, programs, or activities, or discriminating against them because of a disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  *See also* 28 U.S.C. § 794(a) (Rehabilitation Act).

---

[1] Plaintiffs incorrectly stated in the Complaint, D.E. 1, at ¶ 48 that the State of Florida agency which adopted DAA drugs for all HCV patients was the Florida Department of Children and Families when it should instead state the Florida Agency for Health Care Administration.

-3-

Plaintiffs' allegations clearly meet this standard.  They have clearly and adequately plead that prisoners with the hepatitis C virus (HCV) are categorically refused treatment that the medical community deems essential.  D.E. 1 at ¶¶ 64, 70, 82, 152-171; *see also id*. at ¶¶ 88-92, 106-107 (alleging that Plaintiff Carl Hoffer is a qualified individual with a disability who has been categorically refused treatment for his HCV, which will likely result in his death); *id*. at ¶¶ 108-112, 123-124 (alleging that Plaintiff Ronald McPherson is a qualified individual with a disability who has been categorically refused treatment for his HCV); *id*. at ¶¶ 125-129, 138-139 (alleging the same for Plaintiff Roland Molina).  This categorical denial of medication to HCV-positive prisoners denies them access to and the benefits of medical services, while at the same time not imposing such a ban on prisoners with other disabilities, or non-disabled prisoners.  This amounts to discrimination on the basis of disability, which clearly states an ADA and RA claim.

Defendant does not dispute this, but instead makes several meritless arguments, all of which mischaracterize Plaintiffs' allegations.  In the first place, Defendant incorrectly asserts that medical claims can never fall under the ambit of the ADA or the RA.  D.E. 18 at 2-5.  In fact, it is axiomatic that "a prisoner's medical services" is "one of the services, programs, or activities covered by the ADA" and that denying a prisoner access to such services can violate the statute.  *Kiman v. Hampshire Dep't of Corr.*, 451 F.3d 274, 286-87 (1st Cir. 2006) ("Access to

prescription medications is part of a prison's medical services and thus is one of the services, programs, or activities covered by the ADA."); *see also Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("services, programs, or activities" in § 12132 include prison medical services).   Second, Plaintiffs are not simply challenging the adequacy of their care, they are alleging that they are being totally denied access to the *only* medical treatment available for hepatitis C under the prevailing standard of care, the same standard of care that guides Florida's Medicaid program.  D.E. 1 at ¶ 48; D.E. 11-1.  In contrast to a simple disagreement with the adequacy of care, Plaintiffs' true allegation is that they have been "discriminatorily precluded from access to medical treatment altogether."  *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1241 (D. Colo. 2009).  They are not demanding "the most cutting edge Hepatitis C drugs," D.E. 18 at 2—as if there were another effective option—they are seeking the *only* available treatment for Hepatitis C, which FDC has refused to provide.  This clearly states an ADA claim.

In fact, last month, in a case nearly identical to this one (alleging a correctional agency's system-wide refusal to provide DAA medications), a federal court rejected the same arguments raised by the Defendant here.  *Postawko v. Missouri Dep't of Corr.*, No. 2:16-CV-04219-NKL, 2017 WL 1968317, at *13 (W.D. Mo. May 11, 2017) ("Claims of inadequate medical treatment for a disability are distinguishable from claims that a prisoner was denied access to medical services because of his

disability.")  In *Postawko*, the court found that the plaintiffs' allegations that the prison system "follows one policy for inmates with chronic HCV and another policy for inmates with other disabilities under which they do not receive lifesaving medications" stated an ADA claim.  *Id*.  Like in *Postawko*, in this case, Plaintiffs have plead that the FDC "categorically withholds treatment from FDC prisoners with HCV, but does not categorically withhold treatment from prisoners with other similar diseases or conditions (such as HIV) or from other prisoners without similar diseases."  D.E. 1 at ¶ 82.  This Court should follow the well-reasoned opinion of the *Postawko* court.  And numerous other courts have held ADA claims should survive in similar circumstances.  *See Lonergan v. Florida Dep't of Corr.*, 623 F. App'x 990, 994 (11th Cir. 2015) ("[T]he failure of the prison to give the Plaintiff the treatment prescribed by his dermatologist is sufficient for the Plaintiff to plead a prima facie ADA claim."); *Mitchell v. Williams*, No. 6:15-CV-93, 2016 WL 723038, at *4 (S.D. Ga. Feb. 22, 2016) ("Plaintiff has plausibly alleged that the Department of Corrections has denied him departmental services, programs, or activities by reason of his having Hepatitis C."); *Payne v. Arizona*, No.CV 09-01195-PHX-NVW, 2012 WL 1151957, at *4 (D. Ariz. Apr. 5, 2012) ("[A] Plaintiff may have a valid claim under the ADA where he can show that Defendant "discriminated against [him] because of his [disability], not by providing him with inadequate care, but by denying him immediate access to prescribed medications.") (quotations/citations

omitted); *Trevino v. Bandera Cty., Tex.*, No. CIV.A.SA08CA-0184-XR, 2008 WL 4239842, at *6 (W.D. Tex. Sept. 15, 2008) ("Defendants also appear to argue that denial of medications is not a program or activity for ADA purposes.  The Court rejects this argument.").

In addition, Defendant is simply incorrect when she asserts that Plaintiffs are receiving "treatment . . . for their HCV."  D.E. 18 at 3.  Plaintiffs have alleged that they are being monitored – which is *not treatment* – and that their symptoms are being somewhat managed, but they are still being categorically denied the only treatment that is available for their underlying disease.  Just as it would violate the ADA to deny an HIV-positive prisoner access to HIV medication, even if other medical treatment was made available for his symptoms, it violates the ADA to deny Plaintiffs with HCV access to HCV medication, even though they are still receiving some medical management of their painful HCV symptoms.  *See McNally v. Prison Health Services*, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (concluding that an HIV patient's claim of discriminatory denial of prescription services provided to general prison population would state an ADA claim).

Further, the authorities relied on by Defendant simply do not stand for the proposition claimed.  *See D.E.* 18 2-3.[2]  In fact, the case Defendant relies on to argue

---

[2] *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1293-94 (11th Cir. 2005) (finding that a hospice care center is not a "public entity" within the meaning of the

that the Eleventh Circuit does not countenance the denial of HCV treatment as an ADA violation, D.E. 18 at 4 n.3, involved a *pro se* prisoner who did not allege ADA or RA claims and also failed to allege that he suffered any negative health consequences.  *See Black v. Alabama Dep't of Corr.*, 578 F. App'x 794, 794-96 (11th Cir. 2014).  Also, the facts of that case, from 2011 to 2013, predate the current medical standard of care, which is to give direct acting antivirals to all patients with chronic HCV.  *See id.* at 795.  Likewise, Defendant improperly relies on another *pro se* prisoner case where the plaintiff did not plead an ADA claim and where the court denied plaintiff's *in forma pauperis* motion because the plaintiff did not allege that he was under imminent danger of serious physical injury.  D.E. 18 at 4 n.3; *Melendez v. Florida Dep't of Corr.*, No. 3:15CV450-RV-CJK, 2016 WL 5539781, at *1-4 (N.D. Fla. Aug. 30, 2016), report and recommendation adopted, No. 3:15CV450-RV-CJK, 2016 WL 5661012 (N.D. Fla. Sept. 28, 2016).  Finally, Defendant's citation to *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999), is inapposite, as the *Olmstead* court reaffirmed that, "States must adhere to the ADA's

---

ADA and that the ADA is not applicable to "termination of care cases"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (finding no ADA claim where Plaintiff did not allege that he was being discriminatorily excluded from a prison service); *Shelton v. Arkansas Dep't of Human Servs.*, 677 F.3d 837, 839 (8th Cir. 2012) (finding that alleged negligent failure to administer mouth-to-mouth assistance to decedent did not constitute an ADA claim); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (finding that the ADA and RA do not provide private rights of action for "alleged medical negligence").

nondiscrimination requirement with regard to the services they in fact provide." *Olmstead* did not hold that claims involving medical treatment cannot be brought under the ADA, whether alleging a breach of the standard of care or not.

Finally, Defendant appears to argue that Plaintiffs fail to state an RA claim. This argument fails because, "[w]ith the exception of its federal funding requirement, the RA uses the same standards as the ADA." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005). To plead an ADA and an RA claim, a plaintiff must show that (1) she is a qualified individual with a disability; (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or discriminated against; (3) by reason of a disability. *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (citing 42 U.S.C. § 12132). *See also* 28 U.S.C. § 794(a) (similar standard in RA). Plaintiffs have adequately plead every element: that they are qualified individuals with a disability due to their chronic HCV, and they were denied the benefits of medical services because of their disability. D.E. 1 ¶¶ 152-171.

Moreover, Defendant's contention that Plaintiffs are not "otherwise qualified" because that determination must be made by comparison to another non-disabled groups is wrong. The case upon which Defendant relies—the District Court's opinion in *Schiavo v. Schiavo*—cites only one Seventh Circuit case for this proposition. *See Schiavo ex rel Schindler v. Schiavo,* 358 F. Supp. 2d 1161, 1166

(M.D. Fla.) (citing *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 119 (7th Cir. 1997)).   But this portion of *Grzan* was later overruled by the Seventh Circuit, which recognized that the Supreme Court had rejected such a notion. *Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013) ("*Grzan* thought that "discrimination" requires a comparison to the treatment of someone outside the protected class; *Olmstead* holds otherwise.").   The Supreme Court instead recognized that discrimination between groups with different disabilities is a viable theory under the ADA and RA, which is part of what Plaintiffs allege here: Prisoners with other disabilities (such as other diseases like HIV), are provided treatment, while prisoners with HCV are not.[3]

Further, to the extent that the "otherwise qualified" issue is relevant, Defendant has defined the program, service, or activity too narrowly.   The pertinent service from which Plaintiffs have been excluded is not DAA drugs; it is medical services.   That is, when other prisoners without disabilities present to medical staff, they are presumably evaluated and treated in the manner deemed appropriate by

---

[3] The other cases Defendant cites, D.E. 19 at 5, are inapposite for the reasons stated above: they concern disputes over medical treatment decisions, not wholesale exclusion from medical services.   *See Iafornaro v. Mississippi*, No. 6:08-CV-1063-ORL-19, 2008 WL 2856649, at *2 (M.D. Fla. July 22, 2008) (finding that RA does not apply to "decisions involving medical treatment"); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992) (finding that RA did not apply to doctor's decision to withhold corrective surgery from infant with birth defect).

medical staff.  HCV patients, however, receive no such evaluation or treatment. They are confronted with a policy of not providing the only treatment deemed appropriate by the medical community.   They are thus excluded from access to medical services because of their disability, despite the fact that they are otherwise qualified to receive such services.

Finally, Plaintiffs have also stated an ADA claim based on the implementing regulations, which require public entities to provide equal access and enjoyment of all services, 28 C.F.R. § 35.130(b)(1), and prohibit public entities from using criteria or methods that have the effect of subjecting individuals with disabilities to discrimination or that defeat or substantially impair accomplishment of the objectives of any program, service, or activity. 28 C.F.R. § 35.130(b)(3).  These regulations are authoritative interpretations of the statute and therefore must be given controlling weight.   *Shotz*, 256 F.3d at 1079–80.  By refusing to treat HCV, Defendant has not provided equal access to medical services, and has implemented a policy that has the effect of substantially impairing HCV patients' access to medical services.  Plaintiffs have therefore adequately plead a violation of the ADA regulations.

## Conclusion

Thus, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

**Certificate of Word Limit**.  Pursuant to N.D. Fla. Local Rule 7.1(F), this Response contains 2,632 words.

Respectfully submitted,

Randall C. Berg, Jr., Esq.
Fla. Bar No. 318371
*RBerg@FloridaJusticeInstitute.org*
Dante P. Trevisani, Esq.
Fla. Bar No. 72912
*DTrevisani@FloridaJusticeInstitute.org*
Erica A. Selig, Esq.
Fla. Bar No. 0120581
*ESelig@FloridaJusticeInstitute.org*
FLORIDA JUSTICE INSTITUTE, INC.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131-2309
305.358.2081
305.358.0910 (Fax)

*s/Randall C. Berg, Jr.*
Randall C. Berg, Jr., Esq.

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, June 12, 2017, the foregoing with the Clerk of the Court using the CM/ECF system, which will send

-12-

notification of such filing to all persons registered to receive electronic notifications

for this case, including all opposing counsel.


By:   *s/ Randall C. Berg., Jr.*
          Randall C. Berg, Jr., Esq.