UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CARL HOFFER, et al.,

    *Plaintiffs*,

v.                              Case No. 4:17cv214-MW/CAS

JULIE L. JONES, in her official
capacity as Secretary of the
Florida Department of
Corrections,

    *Defendant.*
_____/

**ORDER MODIFYING PRELIMINARY INJUNCTION**

Defendant moves for a modification of this Court's Order Entering a Preliminary Injunction, ECF No. 185 ("Preliminary Injunction"). ECF No. 211. For the reasons that follow, Defendant's motion is **GRANTED in part** and **DENIED in part**.

I. *First Modification*

In the Preliminary Injunction, this Court held that the Florida Department of Corrections ("FDC") "must stage and evaluate the 2,500 inmates who have the lowest albumin levels no later than February 28, 2018." ECF No. 185, at 4. The reason for that directive was to "ensure that inmates with the most advanced

1

liver disease are staged and evaluated first." *Id.* at 4, n.4. However, Defendant argues that the "use of albumin levels alone is not an effective way to determine which patients are the sickest." ECF No. 211, at 5. Indeed, Defendant's medical expert, Dr. Dewsnup, asserts that a better method to identify the sickest patients is to "use albumin in conjunction with the predictive scoring index (FibroSURE), other lab tests on the spreadsheet, and also the abdominal ultrasound." ECF No. 211-1, at 3. This Court accepts Dr. Dewsnup's statements on this issue, and will modify the Preliminary Injunction accordingly. If Plaintiffs disagree, they are free to file a motion for modification and explain why using albumin alone (or any other method) would be preferable, and this Court will set an evidentiary hearing on the matter.

II. *Second Modification*

In the Preliminary Injunction, this Court held that "FDC must initiate treatment for all known chronic HCV inmates, who are eligible for treatment, and who have fibrosis stage 3, by December 31, 2018." ECF No. 185, at 4. Similarly, this Court also held that "FDC must initiate treatment for all known chronic HCV inmates, who are eligible for treatment, and who have fibrosis stage 2, by December 31, 2018." *Id.* Although Defendant believes

that FDC is capable of treating the F3 inmates by December 31, 2018, Defendant does not believe that FDC will be able to treat the F2 inmates by then. *See* ECF No. 211, at 7–15. Accordingly, Defendant asks this Court to modify the Preliminary Injunction and give FDC an extra year to treat the F2 inmates. *Id.* at 14–15.

As Dr. Dewsnup notes, "the safest course is to treat F2s and F3s within one year." ECF No. 211-2, at 3. Indeed, in a perfect world, this Court would wave a magic wand, and everyone would be treated immediately. Unfortunately, this world is not perfect, and this Court does not have a magic wand. As such, this Court is cognizant of reality and understands FDC's difficulties in meeting the deadlines.

While not embraced by everyone, this Court actually values scientific evidence. And Dr. Dewsnup explains that "the best scientific evidence indicates that it is more likely than not just as safe to treat F2s within 24 months as it is to treat F3s within 12 months." *Id.* at 3–4. That is, "an extension of treatment for F2s into the 12-24 month time period does not raise their mortality risk or risk of ELSD to a level beyond that which has been already deemed acceptable for F3 patients by the Court." *Id.* at 5. As such, Dr. Dewsnup opines that "an up to 12-month treatment delay in

3

some F2 patients is acceptable in the light of the temporary issues related to acquisition of funding, and large-scale system expansion problems that Centurion is trying to cope with." *Id.* at 6.

Again, this Court accepts Dr. Dewsnup's statements on this point, and will modify the Preliminary Injunction accordingly. This Court understands that Plaintiffs may have different feelings on this issue. Once again, Plaintiffs are free to file their own motion for modification (along with their own expert testimony) if they wish to convince this Court that a 12-month extension is inappropriate, and this Court will set an evidentiary hearing on the matter.

### III. *Third Modification*

In the Preliminary Injunction, this Court held that Defendant must file monthly status reports "reflecting FDC's progress in complying with this Court's injunction." ECF No. 185, at 5. This Court further held that the status reports must detail "[t]he total number of inmates in FDC custody who have been screened/tested for HCV." *Id.* at 6. Defendant argues that the requirement to list inmates that have been screened/tested should be removed because Plaintiffs were not harmed by FDC's HCV

4

testing protocols and therefore have no standing to warrant such a remedy. *See* ECF No. 211, at 15–17.

Defendant's argument is patently absurd. It is clearly within this Court's purview to ensure that a preliminary injunction is complied with. Defendants could easily avoid their obligation to treat HCV-infected inmates by simply not testing inmates for HCV. That is, FDC could willfully remain blind to the number of inmates who have HCV, not treat the inmates it doesn't know about, and feign compliance with its obligations.[1] By monitoring the number of inmates that are screened/tested, this Court is preventing precisely that type of behavior.

## IV. *Final Note*

Victoria Love, the "Regional Vice President of Operations for Florida for Centurion of Florida, LLC" stated in her signed declaration that "it will be difficult if not impossible to initiate treatment of all the F4s by the end of May." ECF No. 211-3, at 1, 6. Yet, Defendant alleges that "FDC is complying with the Court's order related to the treatment of inmates with fibrosis stage 4." ECF No. 211, at 14. Moreover, Defendant has not moved for a

---

[1] Considering FDC's history of HCV treatment, this type of behavior is certainly not beyond the realm of possibility. *See* ECF No. 153.

5

modification with respect to its obligation to treat F4 patients. Something is wrong. Either FDC is complying with its obligations or it is not. FDC cannot pretend that everything is ok and wait until the last minute to explain why it won't be able to meet the deadlines. If it appears that FDC won't be able to meet the May deadline for F4 patients, then Defendant should move for a modification (just like she did here) and justify why this Court should modify the deadline. To reiterate, "none of the dates in th[e] injunction are 'goals'—the dates are adopted as deadlines that must be complied with." ECF No. 185, at 2, n.2.

Accordingly,

**IT IS ORDERED:**

1. Defendant's motion for modification, ECF No. 211, is **GRANTED in part** and **DENIED in part**.
2. The Preliminary Injunction, ECF No. 185, is modified as follows:
    a. Paragraph 1(b) is modified to read: "FDC must initiate treatment for all known chronic HCV inmates, who are eligible for treatment, and who have fibrosis stage 2, by December 31, 2019."

    b. Paragraph 1(d) is modified to read: "Of the ~7,500 inmates FDC knows have chronic HCV, FDC must stage and evaluate the 2,500 inmates with the most immediate needs (as determined by evaluating albumin levels in conjunction with the predictive scoring index ("FibroSURE"), other lab tests on the spreadsheet, and abdominal ultrasounds) no later than February 28, 2018."

**SO ORDERED on January 31, 2018.**

                                            **s/Mark E. Walker**  
                                            **United States District Judge**