UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JEFFREY FOWLER, PAUL WHOOTEN, MICHAEL
TURNER, and MICHAEL FITZPATRICK on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

THOMAS TURCO,
Commissioner of Massachusetts Department
of Correction, in his official capacity, and
MASSACHUSETTS PARTNERSHIP FOR
CORRECTIONAL HEALTHCARE, INC.,

Defendants.

C.A. NO. 1:15CV12298-NMG

# SETTLEMENT AGREEMENT

I. **PARTIES AND DEFINITIONS**

1. The Parties to this Settlement Agreement ("Agreement") are plaintiffs Jeffrey Fowler, Paul Whooten, and Michael Turner[1]; the Class Members; and defendant Thomas Turco, in his official capacity as Commissioner of the Massachusetts Department of Correction. Defendant Massachusetts Partnership for Correctional Healthcare is not a party to this Agreement.

2. "Action" shall refer to the above-captioned action.

3. "Amended Complaint" shall refer to the Amended Complaint filed in the Action on or about July 29, 2016.

4. "Class Counsel" shall refer to Joel Thompson of Prisoners' Legal Services and

---

[1] Michael Fitzpatrick, identified in the case as a class representative, is no longer in the custody of the Department of Correction and thus is not a member of the class. Counsel will file an appropriate motion removing him as a class representative.

-1-

Jonathan Shapiro and David Kelston of Shapiro, Weissberg & Garin.

5. "Class Members" shall refer to all current and future DOC prisoners who have or will have Hepatitis C, as defined by the Court in its order allowing class certification.

6. "Contractor" shall refer to the entity providing correctional healthcare to DOC prisoners.

7. "DAA" shall refer to the class of medications known as Direct-Acting Antivirals, used to treat the Hepatitis C virus.

8. "DOC" shall refer to the Massachusetts Department of Correction, as established by G.L. c. 27.

9. "DOC Commissioner" shall refer to the Commissioner of the Massachusetts Department of Correction, as defined in G.L. c. 27, § 1.

10. "Fairness Hearing" shall refer to the hearing before the Court where the Parties will request that this Agreement be entered as an Order of the Court, as fair, reasonable, and adequate, and approve the Fee Award.

11. "Fee Award" shall refer to the amount of attorneys' fees and reimbursement of expenses and costs awarded by the Court to Class Counsel.

12. "Final Approval" shall refer to this Court's entry of this Agreement as an Order of the Court following the Fairness Hearing.

13. "Monitor" shall refer to the consultant(s) hired by DOC to ensure compliance with the Protocol, including any subsequent consultant(s), which DOC selects.

14. "MPCH" shall refer to the Massachusetts Partnership for Correctional Healthcare, one of the defendants in the Action.

15. "Notice" shall refer to the notice to the Class Members of this Agreement.

16. "Patient" shall refer to any prisoner in the custody of DOC who has Hepatitis C.

-2-

17. "Plaintiffs" shall refer to the individuals named as plaintiffs in the Action, and Class Members.

18. "Preliminary Court Approval" shall refer to the Court's preliminary approval of this Agreement and the Notice.

19. "Prisoner" shall refer to a committed offender and such other person as is placed in custody in a state correctional facility in accordance with law, as defined in G.L. c. 125, § 1(m), or an Inmate as defined in G.L. c. 125, § 1(i).

20. "Protocol" shall refer to the document titled "Clinical Guidance: Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection," as amended from time to time in accordance with the provisions of this Agreement. A current version of the Protocol, dated February 2018, is appended hereto as Exhibit A, the provisions of which are incorporated herein by reference.

## II. FOCUS OF THIS AGREEMENT

21. The Parties acknowledge and agree that this Agreement is intended to address the medical treatment of Prisoners who have Hepatitis C.

## III. IMPLEMENTATION OF HEPATITIS C TREATMENT PROTOCOL

22. Immediately following execution of this Agreement and Preliminary Approval by the Court and for the term of this Agreement, DOC shall cause the Contractor to implement the Protocol.

23. As of the date of Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to produce a list of all Patients, and DOC shall produce a copy of the list to Class Counsel.

24. As detailed at pages 12-14 of the Protocol, DOC shall cause the Contractor to assign all Patients a Priority Level of 1, 2a, 2b, 2c, or 3, based on the criteria stated therein, and in

-3-

accordance with the screening and testing procedures set forth in the Protocol.

25. Within 12 months of the date of Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to treat all Priority Level 1 Patients identified pursuant to paragraph 24 of this Agreement with DAAs, in accordance with the terms of the Protocol, regardless of how long it takes for the Contractor to assign them to this Priority Level.

26. Within 18 months of the date of Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to treat all Priority Level 2a, 2b, and 2c Patients identified pursuant to paragraph 24 of this Agreement with DAAs, in accordance with the terms of the Protocol, regardless of how long it takes for the Contractor to assign them to this Priority Level.

27. During the 18 months following the date of Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to treat any newly-admitted Prisoner who has the Hepatitis C virus and who is assigned a Priority Level of 1, 2a, 2b, or 2c, with DAAs, in accordance with the terms of the Protocol and in the following timeframes:

- Level 1 within 9 months of being assigned to Level 1; and,

- Levels 2a, 2b, and 2c within 12 months of being assigned to Level 2a, 2b, or 2c.

28. Within 18 months of the date of Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to treat any existing Patient who had been assigned a Priority Level of 3, but who subsequently is re-assigned a Priority Level of 1, 2a, 2b, or 2c, with DAAs, in accordance with the terms of the Protocol and in the following timeframes:

- Level 1 within 9 months of being assigned to Level 1; and,

- Levels 2a, 2b, and 2c within 12 months of being assigned to Level 2a, 2b, or 2c.

29. Notwithstanding any other provision in this Agreement, after the initial 18-month period following Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to treat any Prisoner who has the Hepatitis C virus and who is assigned a Priority Level of 1 with DAAs, in accordance with the terms of the Protocol, within 3 months of being assigned

-4-

or reassigned to Level 1.

30. Notwithstanding any other provision in this Agreement, after the initial 18-month period following Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to treat any Prisoner who has the Hepatitis C virus and who is assigned a Priority Level of 2a or 2b with DAAs, in accordance with the terms of the Protocol, within 6 months of being assigned or reassigned to Level 2a or 2b.

31. Notwithstanding any other provision in this Agreement, after the initial 18-month period following Preliminary Approval of this Agreement by the Court, DOC shall cause the Contractor to treat any Prisoner who has the Hepatitis C virus and who is assigned a Priority Level of 2c with DAAs, in accordance with the terms of the Protocol, within 12 months of being assigned or reassigned to Level 2c.

32. The schedule laid out above is based on the review and analysis of current Patient information provided by DOC's Contractor and on national benchmarking data. DOC estimates that approximately 280 Patients in the current Prisoner population fall into Priority Levels 1, 2a, 2b, or 2c. If actual clinical experience demonstrates a 30% higher number of patients categorized as Priority Level 1, 2a, 2b or 2c than expected, the schedule shall be subject to revision. In this event, DOC shall notify Class Counsel in writing of the higher than expected Patient identification numbers and Class Counsel and DOC shall negotiate in good faith on a revised schedule. In any event:

- the schedule laid out in paragraph 25 shall not extend beyond 12 months from the date of Preliminary Approval of this Agreement by the Court;
- the schedule laid out in paragraph 26 shall not extend beyond 30 months from the date of Preliminary Approval of this Agreement by the Court.

33. In the event that changes in medical practice or the operational needs of DOC and/or the Contractor require revisions to the Protocol, DOC agrees to provide written notice of the

-5-

proposed changes to Class Counsel. Class Counsel shall have 30 days to comment on the proposed changes, which DOC shall consider in good faith, and any disputes between DOC and Class Counsel shall be resolved pursuant to Section VII of this Agreement. Any changes to the Protocol shall not extend the schedule for treatment outlined above or materially reduce the treatment provided.

### IV.   MONITORING FOR COMPLIANCE WITH THE PROTOCOL AND AGREEMENT

34.   Within 60 days of Final Approval, DOC shall enter into an agreement with a Monitor, who shall not be DOC's medical contractor or any person employed by DOC, and who shall be reasonably acceptable to Class Counsel, whose role will be to ensure proper adoption and implementation of the Protocol. DOC shall provide a copy of the agreement with the Monitor to Class Counsel.

35.   The Monitor shall conduct a concurrent review of a random selection of 100 identified Patients within the first 180 days of implementation of the Protocol, as set forth in paragraph 23 of this Agreement, from the screening and testing phase through the treatment and post-treatment monitoring, for such period of time as the Patient remains in DOC custody.

36.   In addition to its concurrent review, the Monitor shall, at 6-month intervals starting upon DOC's entering into an agreement with the Monitor as set forth in paragraph 34 of this Agreement, conduct a retrospective review of Protocol adherence, from patient screening and baseline testing through post-treatment monitoring. The retrospective review shall include an audit of at least 10% of all Patient medical records, to ensure appropriate testing and staging in accordance with the Protocol.

37.   The Monitor shall provide 6-month reports to the Parties on the results of its reviews. The Monitor, Class Counsel, Plaintiffs, and the Contractor shall use these reports only in connection with this litigation and for no purpose other than determining adherence to the Agreement and the agreed-upon Protocol. These reports shall not be disseminated other than to

Class Counsel, DOC, and the Contractor and cannot be introduced in any proceeding other than in this Action and then only for the purpose of demonstrating material compliance or material non-compliance with the adoption and implementation of the Protocol.

38. The Monitor's monitoring functions under this Agreement shall continue for a period of 30 months from the date of Final Approval of this Agreement by the Court.

39. The Monitor shall have access to all Prisoner medical records for the limited purpose of conducting its concurrent and retrospective reviews as detailed above. DOC shall cause the Contractor to cooperate with the Monitor and to provide access to all needed Prisoner medical records. All Parties shall comply with all applicable state and federal laws and requirements governing confidentiality of medical records, and shall negotiate in good faith to enter into any agreements required to protect said confidentiality of Prisoner medical records.

40. DOC's agreement with the Monitor shall provide that if the Monitor believes that there has been material non-compliance with the adoption and implementation of the Protocol, the Monitor shall raise that issue promptly with DOC and with Class Counsel and shall identify, in writing, the specific provision for which the Monitor believes there has been material non-compliance. The purpose of doing so will be to give the Parties a reasonable opportunity to review, discuss and correct any such material non-compliance. DOC shall provide the Monitor and Class Counsel with a written response within thirty (30) days. Any further dispute resolution required in response to findings by the Monitor shall be subject to the Dispute Resolution provisions of Section VII of this Agreement.

41. In addition to the Monitor's review for compliance with the Protocol, DOC shall, at 3-month intervals, generate and provide to Class Counsel reports sufficient to determine compliance with the treatment schedule set forth in paragraphs 25 to 31 of this Agreement. Such reports shall include, at a minimum, a list of all Patients, along with each Patient's assigned Priority Level, the date each Patient was assigned that Priority Level, the date each Patient entered DOC custody, and

-7-

the date each Patient began treatment with DAAs, if at all. If Class Counsel believes there has been material non-compliance with the treatment schedule set forth in paragraphs 25 to 31 of this Agreement, Class Counsel shall notify DOC in writing of the specific provision for which the Monitor believes there has been material non-compliance. DOC shall provide Class Counsel with a written response within thirty (30) days. Any further dispute resolution shall be subject to the Dispute Resolution provisions of Section VII of this Agreement.

V. **PRELIMINARY APPROVAL**

42. As soon as practicable following execution of this Agreement, DOC shall provide Class Counsel with the names and addresses of all Class Members, in the form of the "HCV Summary" provided by MPCH, and the Parties shall apply to the Court for a preliminary order:

> a) granting Preliminary Approval of this Agreement for purposes of disseminating notice to current DOC prisoners who are Class Members;
>
> b) approving the form, contents, and dissemination of the Notice of this Agreement to current DOC prisoners who are Class Members in the form and pursuant to the method attached hereto as Exhibit B;
>
> c) scheduling a Fairness Hearing to review comments and/or objections regarding this Agreement, consider the fairness, reasonableness, and adequacy of this Agreement, and consider whether the Court should order Final Approval of this Agreement and grant Class Counsel's requested Fee Award.

VI. **THE FEE AWARD**

43. Class Counsel may file an application with the Court for payment by DOC of the Fee Award, to include (i) their reasonable attorneys' fees in an amount not to exceed $270,000.00, and (ii) their costs and expenses incurred in prosecution of this Action not to exceed $1,500.00. DOC agrees not to object to, and DOC agrees to pay such Fee Award if limited to those amounts. Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or

-8-

in part, the Fee Award sought by Class Counsel shall not prevent this Agreement from becoming effective nor be grounds for termination of this Agreement. Class counsel reserve all rights to seek reasonable attorneys' fees and costs for successful enforcement of this Agreement after Final Approval, and DOC reserves all rights to oppose any such petition for fees and costs.

## VII. FINAL APPROVAL, DISPUTE RESOLUTION, AND ENFORCEMENT

44. All Parties agree that this Agreement represents a full and fair resolution of the claims for relief alleged in the Amended Complaint concerning the medical treatment of Prisoners who have Hepatitis C.

45. For purposes of this Agreement and its Final Approval by the Court, the Parties agree that this Action shall be maintained as a class action under FED. R. CIV. P. 23 with the class defined as all current and future DOC prisoners who have or will have Hepatitis C. The Parties also agree that the named plaintiffs, with the exception of Michael Fitzpatrick, or any person substituted for a named plaintiff by the Parties, shall be the class representatives for the Class Members.

46. This Agreement shall be subject to the Final Approval of the Court. The Parties shall cooperate in presenting this Agreement to the Court for Final Approval and/or at any hearing under FED. R. CIV. P. 23(e). If the Court grants Final Approval, the Parties stipulate that this Agreement shall not be construed as a consent decree. If the Court does not grant Final Approval, this Agreement shall be null and void and of no force and effect, and nothing herein shall be deemed to prejudice the position of any Party with respect to the Action or otherwise, and neither the existence of this Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be admissible in evidence, referred to for any purpose in the Action or in any other litigation or proceeding, or construed as an admission, presumption, or concession by any Defendant of any liability or the truth of any of the allegations in the Action.

47. This Agreement may be enforced only by the Parties hereto. Nothing contained in this Agreement is intended or shall be construed to evidence an intention to confer any rights or

remedies upon any person other than the Parties hereto.

48. If Plaintiffs believe that there has been material non-compliance with any provision of this Agreement by DOC, Plaintiffs, through Class Counsel, shall provide counsel of record for DOC, in writing, the specific reasons and grounds for such belief, including an identification of the specific provision with which such Plaintiff or Class Member believes there was material non-compliance. DOC shall have 30 days to respond to Plaintiffs' written statement. The Parties agree that any minor, incidental, or isolated breach or delay in implementation of a provision of this Agreement shall not constitute material non-compliance.

49. If the alleged material non-compliance is not resolved by or in connection with DOC's response to Plaintiffs' written statement, Plaintiffs, through Class Counsel, and DOC may jointly or individually seek relief from the Court to effect material compliance with this Agreement.

50. If the Court determines that there has been material non-compliance by DOC with a provision of this Agreement at any time during the period of the Agreement, the Court may enter an order consistent with equitable principles that is designed to achieve material compliance with such provision(s) of this Agreement, but not through a petition for contempt.

51. If Plaintiffs, through Class Counsel, contend that DOC has not complied with an order entered by the Court under the preceding paragraph, Plaintiffs may, after reasonable notice to DOC, move for further relief from the Court to obtain compliance with the Court's prior order. In ruling on such motion, the Court may apply equitable principles and may use any appropriate equitable or remedial power available to it.

52. The term of this Agreement shall commence upon the date of Final Approval by the Court and shall extend for 30 months from said date of Final Approval. The Court's jurisdiction shall terminate at the end of the 30-month period with respect to any provision of this Agreement for which there is no pending claim that DOC is in material non-compliance. If the Court

-10-

determines that there has been material non-compliance by DOC with a provision of this Agreement at any time during the 30-month period of this Agreement, or if there is a pending claim at the end of the 30-month period, the Court's jurisdiction with respect to such provision or provisions relating thereto shall continue until such time as DOC is found by the Court to be in compliance with this Agreement.

53. The Court shall be the sole forum for the enforcement of this Agreement. The Parties agree not to seek termination of or otherwise challenge this Agreement or any order approving this Agreement during the period of time that the Court retains jurisdiction. Nothing in this paragraph shall limit the Parties' rights to challenge or appeal any finding or any order entered by the Court.

54. Subject to the provisions set forth in this Section, this Agreement shall expire at the end of 30 months from the date of Final Approval by the Court and the Action shall be dismissed with prejudice.

VIII. DISMISSAL OF MPCH FROM ACTION

55. Plaintiffs agree to dismiss MPCH from this Action, with prejudice, upon Final Approval of this Agreement.

IX. APPROPRIATIONS AND RECEIPT OF FUNDING

56. The Parties acknowledge that DOC's ability to fulfill its obligations under this Agreement is subject to appropriations by the Legislature.

57. In order to implement and comply with this Agreement, the DOC shall submit budget requests as needed and will, consistent with Article 63 of the Massachusetts Constitution, make its best efforts to obtain the funding necessary to implement and comply with this Agreement. In the event that DOC alleges that it is unable to fulfill its obligations under this Agreement because of no or inadequate appropriations by the Legislature, Class Counsel reserve all rights to seek additional relief from the Court, including orders to the Commonwealth's executive or

legislative branch and DOC reserves all rights to respond and/or oppose any such requested additional relief.

X. **NO ADMISSION OF LIABILITY**

58. Nothing in this Agreement shall be construed in any way as an admission by DOC of any liability or wrongdoing whatsoever. DOC specifically disclaims any liability or wrongdoing whatsoever on the part of itself, its agents, and employees.

XI. **MISCELLANEOUS**

59. This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof.

60. This Agreement shall be deemed to be made and entered into in the Commonwealth of Massachusetts and shall in all respects be interpreted, enforced, and governed under the laws of said Commonwealth and the laws of the United States.

61. This Agreement may not be relied upon as precedent in any future claim and shall not in any way be construed as an admission, presumption, or concession by any Defendant of any liability or wrongdoing whatsoever.

62. Each Party represents and acknowledges that each Party is and has been represented by its own counsel. Each Party further represents and acknowledges that, in executing this Agreement, no Party relies or has relied upon any representations or statements made by any other Party or its counsel other than the promises and representations set forth in this Agreement.

63. Should any part, term, or provision of this Agreement be declared or be determined by any Court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement, unless the Court declines to approve this Agreement.

64. Except as otherwise stated, this Agreement shall only be amended, revoked,

-12-

-13-

changed, or modified through a written agreement executed by all the Parties and approved by the Court. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the Party against whom such waiver is charged and approved by the Court.

65. This Agreement is the result of an arm's-length negotiation. Since all Parties contributed substantially, materially, and cooperatively in drafting this Agreement, it shall not be more strictly construed against one Party than any other.

66. This Agreement may be executed in a number of identical counterparts, all of which shall together constitute one Agreement, and such execution may be evidenced by signatures delivered by facsimile transmission or other electronic means.

**JEFFREY FOWLER, PAUL WHOOTEN, AND MICHAEL TURNER** on behalf of themselves and all others similarly situated,

**Plaintiffs,**
By their attorneys,

*[signature]*

Joel H. Thompson, BBO #662164
jthompson@plsma.org
Prisoners' Legal Services
10 Winthrop Square, 3rd Flr.
Boston, MA 02110
(617) 482-2773, ext. 102

*[signature]*

Jonathan Shapiro, BBO #454220
jshapiro@swglegal.com
David Kelston, BBO #267310
dkelston@swglegal.com
Shapiro Weissberg & Garin
90 Canal Street
Boston, MA 02114
(617) 742-5800, ext. 115

2/15/'18
Date

-15-

THOMAS TURCO, III, Commissioner of the Massachusetts Department of Correction,

**Defendant**

_____    2/14/18
Signature                             Date

Counsel for Thomas Turco, III

_____
Janna J. Hansen, BBO # 662063
Carrie Benedon, BBO # 625058
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2812 (Hansen)
(617) 963-2080 (Benedon)
Janna.Hansen@state.ma.us
Carrie.Benedon@state.ma.us

-15-